## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ZANE and LEAH HEDGER,
Individually, and as Parents and Next       )
of Kin of J.R.H., deceased and S.H.,        )
a minor,                                    )
                                            )
                  Plaintiffs,               )
vs.                                         )          NO.  CIV-13-0654-HE
                                            )
TRACI D. KRAMER, an    individual,          )
*et al.,*                                   )
                                            )
                  Defendants.               )

### ORDER

This case arises out of the death of J.R.H., the infant son of plaintiffs Zane and Leah

Hedger.  According to the petition filed in state court, J.R.H. sustained two severe skull

fractures while in the care of defendant Traci Kramer, resulting in his death on March 9,

2011.  The petition generally alleges that an investigation was conducted into the death,

resulting in, among other things, legal proceedings seeking the termination of the Hedger's

parental rights as to a second child, S.H., and S.H.'s temporary placement in foster care.  The

petition asserts claims against Traci Kramer for negligence/wrongful death, against the City

of Edmond and the Edmond police detective who investigated the death (Misty Leach), and

against the Oklahoma Department of Human Services ("DHS") and the DHS caseworker and

supervisor who investigated the death (Julie Whitaker and Tamara Washington).[1]  A claim

is also asserted against Kevin Kramer, the husband of Traci Kramer, for intentional infliction

---

[1] *Plaintiffs' claims are asserted on behalf of Mr. and Mrs. Hedger personally and as parents and next of kin of J.R.H. and S.H.*

of emotional distress.

The case was removed to this court by certain of the defendants, on the basis that some of plaintiffs' claims are federal claims seeking relief pursuant to 42 U.S.C. § 1983.[2] Defendant Traci Kramer has since filed an answer asserting multiple counterclaims against plaintiffs.

Motions to dismiss have been filed by defendants Kevin Kramer, DHS, Whitaker and Washington.  Plaintiffs have filed a motion to dismiss the counterclaims of defendant Traci Kramer.

The motions to dismiss are pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.  Rule 12(b)(6) permits a court to dismiss a claim when a party fails "to state a claim upon which relief can be granted."  When considering a Rule 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and those allegations, and any reasonable inferences that might be drawn from them, are construed in the light most favorable to the nonmoving party.  Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010).  Unsupported, conclusory allegations, however, need not be accepted as true.  *See* Kansas Penn Gaming, LLC v. Collings, 656 F.3d 1210, 1214 (10th Cir. 2011).  The question is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Applying this standard, the court concludes the various motions should be granted.

_____

[2]*Plaintiffs' claims for negligence and intentional infliction of emotional distress are based on state law.  As to the § 1983 claims, plaintiffs also assert companion state claims based on Okla. Const. Art. 2, § 30.*

Motion of Kevin Kramer

A single claim is asserted against Mr. Kramer, for intentional infliction of emotional distress.   Under Oklahoma law this claim requires proof that: (1) defendant acted intentionally or recklessly, (2) his conduct was "extreme or outrageous," (3) the conduct caused plaintiff emotional distress, and (4) the emotional distress was severe.  Computer Publications Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002).  The petition does not allege facts (as opposed to conclusory statements) tending to show what Mr. Kramer did or how anything he did was extreme or outrageous.  The facts pleaded indicate he is the spouse of Traci Kramer, that he is employed by the Oklahoma State Bureau of Investigation, and that he got access to the medical records of J.R.H. in some unspecified manner.  Beyond that, the allegations are conclusory — that he "embarked on a course of conduct to intimidate" plaintiffs, that he used his position with the OSBI to "either influence, or make plaintiffs believe he was able to influence" the criminal investigation, that he had "improper" but unspecified contacts with the Medical Examiner's office, and the like.   The allegations don't state, with any degree of factual specificity, what he allegedly did.  They are insufficient to state a plausible claim.

Motion of Julie Whitaker and Tamara Washington

Whitaker is alleged to be the DHS caseworker assigned to investigate the circumstances surrounding the death of J.R.H.  Washington is alleged to be her supervisor. The petition asserts two claims, or categories of claims, against Whitaker and Washington. It asserts claims pursuant to § 1983 for violation of plaintiffs' Fourth and Fourteenth

Amendment rights and also asserts claims for violation of rights under Art. 2, § 30 of the Oklahoma Constitution. The claims are based on the alleged role of these defendants in causing the filing of the termination of parental rights proceeding. It also asserts claims for malicious prosecution.

Defendants assert these claims are insufficiently pleaded under <u>Twombly</u>. They also argue dismissal is warranted based on qualified immunity or the immunity applicable to witnesses.[3] The court concludes the motion should be sustained based on the insufficiency of the pleading. As with the claims against Mr. Kramer, the allegations of the petition are largely conclusory. Plaintiffs allege defendants failed to conduct an adequate investigation, but do not allege what was wrong with it or what state standard was violated. They allege these defendants "caused" the parental rights proceeding to be brought, but do not allege what the particular defendants did. *See* <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1249-50 (10th Cir. 2008) ("In § 1983 cases ... it is particularly important ... that the complaint make clear exactly *who* is alleged to have done *what* to *whom* ...."). The petition does allege that defendants "disregarded" information from doctors at OU Medical Center who allegedly informed them that J.R.H.'s injuries "were not caused by Plaintiffs." Petition, ¶ 9. From the context, it is unclear how attending physicians could have reached that specific a conclusion, but, in any event, the court concludes that factual assertion, by itself, is insufficient to support a claim against these defendants without further factual detail.

---

[3]*These defendants mention, but do not explicitly assert, the issue of whether a private right of action exists to enforce rights under the referenced provision of the Oklahoma Constitution. That argument is explicitly raised by DHS in its motion.*

Given the lack of sufficient factual allegations, and given that the petition was drafted with state rather than federal pleadings in mind, the court concludes it is premature to resolve the motion on the alternative grounds suggested by defendants.  Plaintiffs may be able to allege a constitutional violation such that qualified immunity does not bar it.[4]  Further, those allegations may suggest some actionable conduct by defendants beyond testifying at the parental rights hearing, with the result that defendants' reliance on witness immunity may not shield the entire range of their conduct.

In any event, the motion of these defendants will be granted.[5]

Motion of DHS

The only claim asserted against DHS (i.e. the State of Oklahoma) is based on Art. 2, § 30.[6]  Plaintiffs seek to rely on the Oklahoma Supreme Court's recent decision in Bosh v. Cherokee Co. Bldg. Auth., 305 P.3d 994 (2013).  That case recognized a private right of action for excessive force, based on Art. 2, § 30 of the Oklahoma Constitution, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act, 51 Okla.

---

[4]*The qualified immunity defense may be reurged if appropriate, after any amended pleadings are filed.*

[5]*To the extent plaintiffs assert a claim against these defendants based on Okla. Const. Art. 2, § 30, the court's conclusions as to the DHS motion also appear applicable to them.  In light of that, it is unclear whether a basis for a state law claim exists against these defendants given the provisions of the Oklahoma Governmental Tort Claims Act.  However, that question is not squarely raised by the present motion of these defendants.*

[6]*As plaintiffs' omission of any § 1983 claim against DHS appears to recognize, a suit for damages is ordinarily not available against a state.  States are not "persons" within the meaning of § 1983 and generally have the benefit of Eleventh Amendment immunity.  Will v. Mich. Dept. of State Police, 491 U.S. 58 (1989).*

Stat. §§ 151 et seq.  It further recognized the doctrine of *respondeat superior* as an available theory of recovery for claims under that provision.

As the only claim against DHS is based on the theory of *respondeat superior*, the conclusion that a claim is not sufficiently pled against Whitaker and Washington would necessarily lead to the conclusion that no claim is stated against DHS either.  However, as the parties have also addressed, albeit in a somewhat perfunctory fashion, the further question of whether the <u>Bosh</u> holding extends to the circumstances pleaded here, the court also addresses that additional ground.

DHS argues that <u>Bosh</u> involved a claim for excessive force by a corrections officer and that this case does not involve such a claim.  Plaintiffs seem to argue, without exactly saying it, that <u>Bosh</u> recognizes a private right of action for all state constitutional violations or at least all claimed violations of Art. 2, § 30.[7]  It is apparently plaintiffs' view that the state's interim placement of S.H. in foster care pending resolution of the parental rights termination proceeding was, as to at least S.H. and maybe as to Mr. and Mrs. Ledger, a "seizure" within the meaning of that provision.

It is unclear how expansively the Oklahoma Supreme Court will apply the rule and rationale it adopted in <u>Bosh</u>.  Both <u>Bosh</u> and the prior decision it viewed as foreshadowing <u>Bosh</u>, <u>Washington v. Barry</u>, 55 P.3d 1036 (Okla. 2002), involved the alleged use of excess

---

[7]*The language of Art. 2, § 30 largely parallels the Fourth Amendment to the U. S. Constitution: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."*

force in a detention or correctional setting.  The <u>Bosh</u> court explicitly described its decision as concluding that Art. 2, § 30 "provides a private right of action for excess force" rather than some broader formulation.  <u>Bosh</u>, 305 P.3d at 1001.  This case obviously does not involve claims of excess force.  The language of the <u>Bosh</u> opinion does not imply that the Oklahoma Supreme Court would necessarily imply private rights of actions in other contexts or that it would be more open to creating new private rights of action than other courts have been.  In a somewhat parallel context, the federal courts have been reluctant to expand the availability of a <u>Bivens</u>[8] remedy beyond the circumstances originally embraced by it.  *See generally* <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 421 (1988) (refusing to recognize private right of action against government employees handling social security applications; noting caution in expanding <u>Bivens</u> remedies into new contexts); <u>Bush v. Lucas</u>, 462 U.S. 367, 368 (1983) (refusing to extend <u>Bivens</u> remedy in First Amendment context involving "employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies") While the relatively cautious approach of the federal courts to recognizing private rights of action in this context is not binding on the Oklahoma courts, there is no apparent reason why the same concerns and cautions would not impact any consideration of expanding the <u>Bosh</u> rationale beyond its particular circumstances.  In any event, given the express language of <u>Bosh</u> and the differing circumstances present here,[9] the

---

[8]<u>*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*</u>, *403 U.S. 388 (1971).*

[9]*So far as appears from the pleadings, no plaintiff was in a coercive setting involving circumstances of physical force.  Further, Oklahoma's statutory scheme involving child welfare, and the roles of those participating in the system, will necessarily involve different concerns and*

court concludes the <u>Bosh</u> rule and rationale do not extend to the claims alleged here and that no private right of action exists here for claims based on the Oklahoma Constitution.

<u>Motion of plaintiffs</u>

Plaintiffs seek dismissal of defendant Traci Kramer's counterclaims.  Ms. Kramer purports to state counterclaims for libel, slander, civil conspiracy, and intentional infliction of emotional distress.  Like the allegations of the petition discussed above, the allegations underlying the counterclaims are largely, if not entirely, conclusory.  They allege unspecified "false statements surrounding the death", without identifying what was said, who said it, or to whom.  The conspiracy is said to have existed with unknown persons and to extend to "acquiescing" in websites or new stories about the circumstances.  Such allegations fall short of what is required to show a civil conspiracy.  *See* <u>Tonkovich v. Kan. Bd. of Regents</u>, 159 F.3d 504, 533 (10th Cir. 1998) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.")  Similarly, the allegations as to intentional infliction of emotional distress are purely conclusory — "embarked on a course to intimidate" and the like — without alleging any specific action taken by a defendant or otherwise showing "extreme or outrageous" conduct.

Conclusion

For the reasons stated, the motions to dismiss of Kevin Kramer [Doc. #19], DHS [Doc. #24], Whitaker and Washington [Doc. #25], and plaintiffs [Doc. #26] are **GRANTED**

---

*considerations from those in <u>Bosh</u> as to whether a private right of action is warranted.*

and the claims embraced by those motions **DISMISSED**.  The parties may file amended pleadings, where the defects are susceptible of correction by more specific pleading, within **fourteen (14) days**.

**IT IS SO ORDERED**.

Dated this 30th day of October, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE